H. C. JOHNSON, APPELLANT, v.
OREN BROWN, RESPONDENT.

No. 4187

October 29, 1959                    345 P.2d 754

*Goldwater, Taber and Hill,* of Reno, for Appellant.

*Woodburn, Forman, Wedge, Blakey and Thompson* and *Richards and Swanson,* of Reno, for Respondent.

# OPINION

By the Court, McNamee, C. J.:

Respondent was a guest passenger in a truck as it was being driven north on Chestnut Street (now Arlington Avenue) in the city of Reno toward the intersection of that street and West Commercial Row. At this time appellant, a fireman for the city, was driving a fire engine in response to an emergency call proceeding west on West Commercial Row. After rounding the corner and while driving in excess of the statutory speed limit the fire engine came in contact with the truck on Chestnut Street just a few feet south of the intersection, causing to respondent the injuries complained of. Evidence showed that at the time of the collision, the truck driver was wholly within his own lane of traffic and was applying his brakes.

The jury's verdict was for respondent, and appeal is from the judgment based thereon.

Three errors are assigned for our consideration.

1. Appellant maintains that the trial court erred in giving to the jury the following instruction relative to the degree of care required of the driver of an emergency vehicle while responding to an emergency call.

"It is the law of this state that a fire engine, responding to an emergency call and displaying a red light visible from the front, and sounding a siren, is exempt from and shall not be required to observe certain laws that generally apply to the drivers of vehicles on the public streets.

"This means that the driver of a fire engine, under such circumstances, need not observe laws regarding speed, the use of different lanes of the street, rights of way, stop signs, and turns at intersections. This exemption, however, will not relieve the driver of an emergency vehicle from the duty to drive with due regard

for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of the reckless disregard of the safety of others."

This instruction merely restates the then existing law[1] pertinent to the rights and duties of drivers of emergency vehicles.

There is sufficient evidence in the record to show that appellant was entitled to those exemptions afforded by law to operators of emergency vehicles as are enumerated in said instruction.

It is appellant's contention that the quoted instruction contradicts itself in that while properly charging the jury that the fire engine was exempt from observing certain rules of the road it went on to state "* * * This exemption, however, will not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons using the street * * *."

Appellant argues that the requirement that he drive "with due regard for the safety of others" is met by his compliance with the conditions that entitle him to the exemptions.

There is substantial authority to sustain this view of appellant.

In the case of Lucas v. City of Los Angeles, 10 Cal.2d 476, 75 P.2d 599, 601, where a statute similar to the Reno ordinance provided that an authorized emergency vehicle is exempt by law from complying with specified statutes and ordinances regulating the operation of vehicles on public roads, the court held that if such vehicle is responding to an emergency call, is displaying a visible red light from the front, and is sounding a siren, the driver thereof cannot be negligent in violating such regulations in the absence of reckless disregard of the safety of others. With respect to that part of the statute which states that the provisions thereof "shall not, however, relieve the driver * * * from the duty to drive

[1]Nev. Stat. 1955, c. 118, sec. 1; NCL 1943–1949 Supp., sec. 4350.3; Ord. City of Reno, sec. 10–60, sec. 10–74, sec. 10–75.

with due regard for the safety of all persons using the highway," the court said:

"A simple analysis of these statutory provisions discloses the clear intention of the Legislature to recognize the paramount necessity of providing a clear and speedy pathway for such vehicles when actually confronted with the emergency in which the entire public may be assumed to be concerned. The expression 'with due regard for the safety' of all persons using the highway was explained in the Balthasar Case, where the court said, 187 Cal. 302, at page 311, 202 P. 37, 41, 19 A.L.R. 452: 'It is evident that the right of way of fire apparatus over other vehicles is dependent upon "due regard to the safety of the public" only in so far as such "due regard" affects the person required to yield the right of way. Notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way necessary in order to charge a person with the obligation fixed by law to give precedence to the fire apparatus.' This is the only reasonable interpretation that the statute will bear. If the driver of an emergency vehicle is at all times required to drive with due regard for the safety of the public as all other drivers are required to do, then all the provisions of these statutes relating to emergency vehicles become meaningless and no privileges are granted to them. But if his 'due regard' for the safety of others means that he should, by suitable warning, give others a reasonable opportunity to yield the right of way, the statutes become workable for the purposes intended.

* * * * * * *

"Our conclusions from the foregoing are that when the operator of an emergency vehicle responding to an emergency call gives the statutory notice of his approach the employer is not liable for injuries to another, unless the operator has made an arbitrary exercise of these privileges. In such cases speed, right of way, and all other 'rules of the road' are out of the picture; the only

questions of fact, in so far as the public owner is concerned, are first, whether there was an emergency call within the terms of the statute; second, whether the statutory warning was given; and third, whether there was an arbitrary exercise of these privileges. Here the emergency was conceded, the sounding of the siren was proved by the only substantial evidence offered, and an arbitrary exercise of the privileges has not been shown."

Accord: Raynor v. City of Arcata, 11 Cal.2d 113, 77 P.2d 1054; Lakoduk v. Cruger, 48 Wash.2d 642, 296 P.2d 690.

It is clear to us that the majority and better rule is in opposition to the California rule as expressed in the Lucas case, supra, and requires the driver of an emergency vehicle answering an emergency call to exercise reasonable precautions against the extraordinary dangers of the situation which duty compels him to create, and he must keep in mind the speed at which his vehicle is traveling and the probable consequences of his disregard of traffic signals and other rules of the road.

In the case of Montalto v. Fond du Lac County, 272 Wis. 552, 76 N.W.2d 279, 282, the Wisconsin Supreme Court construed its statute which contained a provision exempting authorized emergency vehicles from certain rules of the road and which stated that "this provision shall not relieve the operator of an authorized vehicle from the duty to operate with due regard for the safety of all persons using the highway." After noting the construction placed on such a statute by the California courts, it stated as follows:

"Appellants argue that the same construction should be given to sec. 85.40 (5), Stats. We cannot agree. We deem the better rule to be that expressed in the following cases:

" 'The right of way given to public service vehicles and their exemption from traffic regulations, however, do not relieve their operators from the duty of exercising due care to prevent injury to themselves and others lawfully upon the ways. * * * while they have a right to assume in the first instance that the operators of

other vehicles will respect their right of way at an intersection, they are warned by a red light flashing against them that other vehicles on the intersecting way are invited to proceed by a green light and may do so. Even if the driver of the other vehicle through negligence disregards their right of way, they must still use due care to avoid a collision. The measure of their responsibility is due care under all the circumstances. (Citing cases.)' Russell v. Nadeau, 1943, 139 Me. 286, 29 A.2d 916, 917.

" 'As we understand appellant's position, it contends that since its ambulance was on an emergency call, the issue of negligence in the rate of speed could not arise against it. This contention is not sound. The law simply exempts it from the arbitrary speed of 20 miles per hour, but it was still under the duty of exercising ordinary care, and in the rate of speed the court convicted it of failing to exercise ordinary care.' Grammier-Dismukes Co. v. Payton, Tex.Civ.App. 1929, 22 S.W.2d 544, 546.

"In our opinion, the giving of visible and audible warnings may or may not afford a reasonable opportunity to others to yield the right of way, depending upon the circumstances present. And the failure to afford that opportunity may be ordinary negligence or reckless disregard, depending on those circumstances.

"To adopt the view of the appellants would mean that a lack of 'due regard' would have to amount to a 'reckless disregard' before an ambulance driver could be held negligent as to speed. That the legislature had no such intention is clear from the fact that sec. 85.40 (5), Stats. both requires that a driver operate with due regard for the safety of others and prohibits the exercise of his privilege with a reckless disregard for their safety."

Similarly the Maryland Court in City of Baltimore v. Fire Insurance Salvage Corps, 219 Md. 75, 148 A.2d 444, 447, refused to follow the California rule, and said:

"The appellant earnestly urges us to adopt what may be called the California rule. In interpreting statutes somewhat similar to ours, that State has held that if the audible signal be given, 'speed, right of way, and all other "rules of the road" are out of the picture,' and the

driver cannot be held responsible for ordinary negligence, but only for 'an arbitrary exercise of these privileges' (the words of the California statute corresponding to 'reckless disregard of the safety of others' in ours). Lucas v. City of Los Angeles, 1938, 10 Cal.2d 476, 75 P.2d 599, 604; Coltman v. City of Beverly Hills, 1940, 40 Cal.App.2d 570, 105 P.2d 153. However, we think the correct rule is that adopted by the Supreme Court of Wisconsin in Montalto v. Fond du Lac County, 1956, 272 Wis. 552, 76 N.W.2d 279, 283. * * * We, therefore, hold that under a proper construction of Section 214, the provision that requires the operator of an authorized emergency vehicle to do so 'with due regard for the safety of all persons using the street' renders him liable for ordinary negligence, namely, a failure to exercise reasonable care and diligence under the circumstances."

In City of Kalamazoo v. Priest, 331 Mich. 43, 49 N.W.2d 52, 54, the court stated:

"It will be noted that the quoted statute, according emergency vehicles the right-of-way, conditions the same upon the sounding of an audible signal by siren, etc. In addition, the statute expressly provides that the driver thereof shall not be relieved from the duty to drive with due regard for the safety of others. The statute exempting such driver from speed limits contains a like provision concerning due regard for the safety of others. Plaintiff cites cases (all California cases, the primary being Lucas, supra) for the proposition that the statutory requirement of due regard for the safety of others is met by the giving of suitable warning. Had such been the legislative intent in the enactment of the Michigan statute, which expressly requires the giving of an audible warning as a condition precedent to an emergency vehicle's acquiring the right-of-way, no purpose would have been served by the further express requirement of the statute that such vehicle be driven with due regard for the safety of others.

\* \* \* \* \* \* \*

"Driving a fire truck into an intersection in full reliance upon the right to exceed speed limits and the right

to proceed without stopping for the stop sign or the through street, but without observing or giving any heed to oncoming traffic on the intersecting through street did not amount to driving with due regard for the safety of others as required by the statute. Such driving in reliance upon a statutory right-of-way has frequently been held to constitute contributory negligence as a matter of law on the part of plaintiff drivers of private vehicles. * * * "

Accord: Henderson v. Watson, Ky. 1953, 262 S.W.2d 811; Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304. See also Russell v. Nadeau, 139 Me. 286, 29 A.2d 916.

While we are not unmindful that the Reno ordinances and state statutes are designed to give emergency vehicles extraordinary rights, they were not intended to absolve the drivers thereof from the duty to be on the lookout at all times for the safety of the public whose peril is increased by their exemptions from the rules of the road. We believe that sound public policy requires such a construction. As we stated in the case of Springer v. Federated Church, 71 Nev. 177, 283 P.2d 1071, 1072, "It may be true that the public conscience demands a more extensive acceptance of tort liability * * *; that the general custom and practice of today is to accept such liability and insure against it." If such be true, the public is better able to carry this burden than the individual.

Under the facts of the present case where the evidence shows that appellant, while responding to an emergency call, approached a through street upon which there is a stop sign for entering vehicles, the through street being heavily traveled at that particular time of day, and proceeds through the stop sign without stopping at a speed in excess of the established speed limits, substantially cutting the corner, and is at the time of the collision on the wrong side of the street, and his vision of oncoming traffic is substantially obstructed, he is not driving with "due regard for the safety of all persons using the

street," and, in the absence of contributory negligence, he is liable to any person injured as a proximate result of his conduct.

2. There is no merit in appellant's contention that respondent was guilty of contributory negligence. Such issue was a matter for the jury and its conclusion from the evidence and the instructions is conclusive. Wells v. Shoemake, 64 Nev. 57, 72, 177 P.2d 451, 459.

3. Over appellant's objection respondent's counsel in his summation to the jury was permitted to suggest a mathematical basis for fixing damages for pain and suffering. He stated: "The argument I am going to make is obviously distasteful to defendants' attorney, but it is the only way I can possibly aid you and give you a guide. If you think I am being unfair, you go into the jury room and say so and come to your own conclusion. It is the only way I know how to argue pain and suffering, and I am frank to say that, ladies and gentlemen. As I stated, what is it worth to have your femur violently driven into your pelvis? What is it worth to have your doctor save your life by a tube tapped into your chest? I suggest $5,000 for the initial blow and injury. He was in the hospital for 75 days, but for only 67, approximately, he was in traction and cast.

"You have seen the traction and you heard the doctor describe the cast. Now, what is it worth, what is it worth to have the traction pin pushed through your leg? What is it worth to have a cast around your body? What is it worth to be in a prison for 67 days? Would ten cents a minute be unfair? That would be $6 an hour. Consider it yourselves. I will give that ten cents a minute, $6 an hour. You can make up your minds whether you feel that is unfair or not. That would be $144 a day, or counsel can correct me if I am wrong, $9,648 for 67 days."

The recent and leading case on this subject, Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, is very persuasive that such suggestion to the jury constitutes an unwarranted intrusion into the domain of the

jury. The cases in favor and against the rule announced in the Botta case are discussed therein as well as in the annotation thereto (60 A.L.R.2d 1347). In New Jersey, however, the rule is that neither court nor counsel are permitted to refer to the ad damnum clause of the complaint.

The rule is to the contrary by statute in Nevada. NRS 16.090 provides for the reading of the pleadings to the jury, and it is the practice in this state for the entire complaint including the prayer thereof, together with the other pleadings to be read as the first order of proceedings after the jury has been sworn. Furthermore, it is common practice in this state for the trial court to instruct the jury that if its verdict is for the plaintiff, it should not be in excess of the particular amount specified in the prayer of the complaint.

We feel therefore that the preferable rule in this state in view of our statute and the custom and practice prevalent thereunder is that whether, under the circumstances of the particular case, the arguments of counsel suggesting a mathematical basis for fixing damages for pain and suffering is an improper invasion of the rights of the jury is to be determined by the trial judge in the exercise of judicial discretion.

Inasmuch as this type of argument may be used only for illustrative purposes, the trial court should insist that it be premised (and in this case it in effect was) by an admonition that the suggestions of counsel are not to be taken as evidence but are merely the thoughts of counsel as to what would be proper damages to award for this item. It should not hesitate to limit counsel whenever it feels that the rights of the jury to determine for itself what would be fair and reasonable compensation for such items of damages, are being invaded, or to give such further admonition as it deems necessary. NRCP 51.

We are not inclined to hold that the lower court erred in permitting the argument to the jury as aforesaid.

Affirmed.

BADT and PIKE, JJ., concur.